**UNITED STATES of America,
Plaintiff–Appellee,**

v.

**Kenneth K. WILSON, Defendant–
Appellant.**

**No. 93–3536.**

United States Court of Appeals,
Sixth Circuit.

Argued March 24, 1994.

Decided June 24, 1994.

Rehearing and Suggestion for Rehearing
En Banc Denied Aug. 30, 1994.

Nancy L. Kelley (argued and briefed), Office of the U.S. Atty., Cleveland, OH, for plaintiff-appellee.

David K. Greer (argued and briefed), Columbus, OH, for defendant-appellant.

Kenneth K. Wilson, pro se.

Before: RYAN and NORRIS, Circuit Judges; and CELEBREZZE, Senior Circuit Judge.

CELEBREZZE, Senior Circuit Judge.

Defendant–Appellant, Kenneth K. Wilson, was indicted in the United States District Court for the Northern District of Ohio, Eastern Division, on four counts, *viz.*, 1) violation of 21 U.S.C. §§ 841(a)(1) and (b)(1)(C), possession with intent to distribute cocaine; 2) violation of 18 U.S.C. § 924(c)(1), use of a firearm in a drug trafficking crime; 3) violation of 18 U.S.C. § 922(g) and 924(a)(2), being a felon in possession of a firearm; and, 4) violation of 21 U.S.C. § 841(a)(1), transport and receipt of firearms for use in a felony.[1]

Prior to trial, defendant filed a motion to dismiss the indictment pending against him. The basis for this motion was an alleged violation of Article IV(e) of the Interstate Agreement on Detainers (IAD) as codified at 18 U.S.C. Appendix II. Specifically, defendant argued that after being indicted on the federal charges, he had been returned to state (Ohio) custody for disposition of pending charges for Carrying a Concealed Weapon (CCW) without first being tried on the federal charge. Defendant, in his motion to dismiss, asserted that this was a violation of the IAD, and the federal indictment was required to have been dismissed with prejudice. The district court denied defendant's motion without a hearing.

The case against defendant then proceeded to trial. Defendant was given a full opportunity to present his defense, including taking the witness stand to testify in his own defense. On the last morning of trial, January 15, 1993, defendant requested additional time because he was anticipating the arrival of two witnesses who would testify on his behalf. The district court granted defendant a delay of thirty minutes. When the thirty minute period had expired and the witnesses were not present, the district court ordered closing arguments to commence.

Apparently, soon afterward, one of defendant's witnesses arrived. The district court

---

1. Upon the motion of the government, count four was dismissed prior to trial.

judge, however, refused to halt closing arguments and allow defendant to reopen his case.

The jury returned a guilty verdict on all three counts.

Defendant, *pro se*, filed a motion for a new trial claiming that he should have been allowed to present the testimony of witnesses even though they may have arrived late; that the evidence against him was insufficient; and, that he was denied the effective assistance of counsel. This motion was further supplemented *pro se*. Defendant then, with the assistance of counsel, filed another motion for a new trial. Finally, defendant, *pro se*, filed a motion to dismiss based upon the denial of his IAD motion. The district court denied all of defendant's motions.

A Pre-Sentence Investigation Report (PSR) was prepared. Defendant, *pro se*, filed objections to the PSR claiming, among other perceived errors, that the district court erred by enhancing his sentence under the Armed Career Criminal statute, 18 U.S.C. § 924(e)(1) and U.S.S.G. § 4B1.4. The district court overruled defendant's objections. A sentencing hearing was held at which time defendant renewed his objections. The district court again overruled the objections. Defendant was sentenced to 262 months imprisonment on counts one and three, to be served concurrently, and five years on count two, to be served consecutively with counts one and three. Defendant was also fined $5,000.00. Defendant filed a timely Notice of Appeal.

### I.

In June of 1992, the Cleveland Police Department's narcotics division received information identifying a man, already known to police officers as defendant, who would be flying to Miami from Cleveland, accompanied by a woman, for the purpose of purchasing illegal drugs. The woman was later identified as Ms. Demetrius Mull. The couple was observed purchasing airplane tickets to Miami and paying for them with cash. Upon

their arrival in Miami, the couple was observed by Drug Enforcement agents being met at the airport and leaving in a private vehicle.

On June 23, the Cleveland Police were notified by an informant that defendant was back in Cleveland with a quantity of cocaine. The police were able to locate defendant's vehicle and observe defendant. Defendant was seen placing a telephone call at a pay telephone booth. At that time, the officers approached defendant's vehicle. Inside Ms. Mull sat with a small child on her lap.

Defendant identified himself to police officers as Paul McCreery and produced a Michigan driver's license and City of Detroit employee identification card in that name. Detective Acklin arrived on the scene and positively identified "McCreery" as Kenneth K. Wilson. Wilson was placed under arrest. A search of Wilson uncovered a motel room key in his possession with the number "304" stamped on it.

Ms. Mull was also asked to produce identification. The police queried whether she possessed any guns. Mull confessed that she had a 9mm. pistol in her diaper bag which was found by the police. She was searched and a .22 caliber gun was also discovered in the waistband of her pants.

The motel key, discovered in defendant's possession, was for the Howard Johnson's motel located in North Randall, Ohio. The police obtained a search warrant for room 304 and discovered a loaded AR–15 rifle inside the room, with an extra ammunition clip found on one of the beds. Also unearthed were eleven bags of cocaine, found in a black briefcase under the other bed.

The manager of the motel revealed that the room had been registered to a Paul McCreery, who had provided a Michigan driver's license as identification.[2] "McCreery" had also requested an extra bed for the room.

At trial, Wilson testified on his own behalf. He stated that he came from Detroit with two other people, Ms. Mull and Paul

---

**2.** At trial, the evidence indicated that the Michigan license and the motel registration had been signed by the same person.

McCreery. He further stated that he was carrying McCreery's driver's license because he knew there was an outstanding warrant for his arrest. Defendant claimed that his time in Cleveland had been spent visiting acquaintances and that other people had used the motel room. He denied any involvement with either the cocaine or the gun.

At sentencing, the government introduced certified copies of defendant's three prior convictions in the state of Michigan for Criminal Sexual Conduct, Second Degree. Accordingly, the district court determined that, based upon these prior convictions, defendant qualified for enhanced sentencing as an Armed Career Criminal.

## II.

Defendant contends the district court abused its discretion by not allowing him the opportunity to call two material witnesses on his behalf. Defendant argues that the district court's refusal to allow him to call these witnesses violated his Sixth Amendment right to present a complete defense. Defendant asserts that these witnesses would have provided testimony corroborating his version of the events.

This court has held that the conduct of a criminal trial is a matter within the discretion of the trial court and such discretion will not be disturbed in the absence of a clear showing of abuse. *United States v. Serio,* 440 F.2d 827, 831 (6th Cir.), *cert. denied,* 404 U.S. 838, 92 S.Ct. 129, 30 L.Ed.2d 71 (1971) (quoting *United States v. Wade,* 364 F.2d 931, 936 (6th Cir.1966)). The district court judge must consider the party's explanation for failing to introduce the evidence earlier, the admissibility of the evidence, its relevance, and the degree to which the opposing party would be prejudiced by reopening the case. *United States v. Blankenship,* 775 F.2d 735, 741 (6th Cir.1985). Furthermore, as the government notes, this court has stated that Fed.R.Evid. 611 provides that the district court has substantial discretion in exercising control over the mode and order of trial. *United States v. Maddox,* 944 F.2d 1223 (6th Cir.), *cert. denied,* — U.S. —, 112 S.Ct. 400, 116 L.Ed.2d 349 (1991).

In the case at bar, at 9:00 a.m., defendant requested additional time for his witnesses to arrive. The district court granted defendant until 9:30. At that time, since the witnesses had not yet arrived, the district court ordered closing arguments to begin. During closing arguments, defense counsel apprised the court that one of defendant's witnesses was now present. The district court, however, determined that since defendant had been informed that court would begin at 9:00, and defendant had failed to have his witnesses there on time, it would be unreasonable to stop final arguments for testimony. Thus, the district court refused to permit defendant to re-open his case. At the close of arguments, defendant proffered that the witness would have testified that he was with defendant on that day, he had driven defendant around town visiting acquaintances, and could substantiate defendant's testimony.

It would have been permissible for the district court to allow the testimony. It cannot, however, be said to have been an abuse of the district court's discretion to deny defendant's request. The judge had clearly informed the parties that court was to commence at 9:00. The judge then gave defendant an additional one-half hour. As the deadline passed, his witnesses were still not present. There was no indication that defendant's witnesses were ever going to arrive. A further delay in the trial could have been pointless. Hence, the district court made a sound decision to move ahead with the trial. To then allow the testimony of a witness after closing arguments would have provided defendant with, perhaps, an unfair advantage and quite possibly confuse the jury. It cannot be said that the district court's decision not to allow defendant to re-open his case was clearly an abuse. Accordingly, this court, on appeal, will not reverse that decision.

## III.

Defendant contends that the district court erred by denying his motion to dismiss based upon violations of the IAD. Article IV(e) of the IAD provides as follows:

If trial is not had on any indictment, information, or complaint contemplated hereby prior to the prisoner's being returned to the original place of imprisonment pursuant to article V(e) hereof, such indictment, information, or complaint shall not be of any further force or effect, and the court shall enter an order dismissing the same with prejudice.

18 U.S.C.App. II.

Defendant states he was first arrested by the Cleveland Police Department. After a federal complaint was filed against him, he was temporarily detained in federal custody. He was then returned to state custody for trial on the concealed weapons charge. Defendant argues that because he was returned to state custody, the federal indictment pending against him must be dismissed.

The government correctly notes that the IAD applies only to prisoners who have been convicted, but that defendant was merely a pre-trial detainee. Defendant, somewhat convolutedly, responds that what he is really saying is that it was possible that at some point he was convicted on state charges and that the district court erred by failing to hold a hearing to determine whether defendant was a pre-trial detainee or a convicted prisoner. Defendant offers no case authority to support his proposition that the court was required to hold such a hearing.

It must first be noted that defendant did not raise this argument prior to the instant appeal. Rather, defendant raised the issue of an alleged violation of Article III of the IAD based upon speedy trial grounds. In addition, if defendant wanted to argue that he had been convicted in state court, thus making himself eligible under the IAD, he bore the burden of raising and proving the issue in the district court. He has failed to do so.

This court has repeatedly held that the IAD applies to prisoners who have begun serving their sentence and not to pre-trial detainees. *See United States v. Muhammad,* 948 F.2d 1449, 1453 (6th Cir.1991); *United States v. Roberts,* 548 F.2d 665, 669 (6th Cir.1977). Since defendant has introduced no evidence that he was anything other than a pre-trial detainee, the district court was not obligated to hold a hearing on the issue and the district court was correct in refusing to grant defendant's motion to dismiss based upon an alleged violation of the IAD.

## IV.

Defendant contends the district court erred in enhancing his sentence under the Armed Career Criminal Act (the Act). 18 U.S.C. § 924(e)(1) provides that a defendant's sentence will be enhanced if he has three prior convictions for violent felonies or serious drug offenses. In the case at bar, defendant argues that the district court erred by enhancing his sentence because: 1) his three previous convictions were constitutionally invalid because he was provided with ineffective assistance of counsel; and, 2) even if valid, there were only two convictions for purposes of the Act because two of the three prior convictions arose out of the same criminal episode. Defendant also argues that the district court erred by imposing a $5,000.00 fine without first analyzing the factors in U.S.S.G. § 5E4.2(d), including his ability to pay.

This court, in an *en banc* decision, recently dealt with the issue of whether a district court was required to consider the constitutional validity of prior state court convictions when disputing a sentencing enhancement under the Act. *United States v. McGlocklin,* 8 F.3d 1037 (6th Cir.1993).[3] Although *McGlocklin* was an exhaustive opinion producing five separate writings, it is clear that *McGlocklin* held that, in limited circumstances, it is within the sentencing court's discretion to entertain challenges to the inclusion of prior convictions. This court held

---

**3.** We note that during the pendency of the instant case, the United States Supreme Court decided this issue, holding that 18 U.S.C. § 924(e) does not authorize a collateral attack on a state conviction. *Curtis v. United States,* — U.S. —, 114 S.Ct. 1732, 128 L.Ed.2d 517 (1994). Additionally, the court held that only in the limited circumstance of a violation of an indigent defendant's right to appointed counsel may a collateral challenge, for sentencing purposes, be brought under the United States Constitution. *Id.*

that first, the defendant must comply with the procedural prerequisites for objecting. Then, the defendant must "state specifically the grounds claimed for the prior conviction's constitutional invalidity in his initial objection and the 'anticipated means by which proof of invalidity will be attempted—whether by documentary evidence, including state court records, testimonial evidence, or combination—with an estimate of the process and the time needed to obtain the required evidence.'" *Id.* at 1045 (*citations omitted*). The district court should also examine whether the defendant had an alternative method for attacking the prior conviction through either state or federal sources. *Id.*

In the case at bar, defendant raised this issue in his supplemental *pro se* written objection to the Presentence Report. He stated that his state court convictions were invalid because he was denied effective assistance of counsel. Further, he expounded on this claim, at least in a limited sense, stating his intent was to prove this issue through the use of affidavits and witnesses. The question remains whether this is adequate compliance in light of *McGlocklin* and whether the district court abused its discretion by refusing to conduct a hearing.

It would appear that it is incumbent on a defendant to more adequately explain the type of proof he would present to the district court. Otherwise, a defendant could raise the issue of ineffective assistance of counsel without giving the court sufficient information to decide the issue. This must be included as part of what this court meant when it stated that defendants were required to produce "an estimate of the process and the time needed...." *McGlocklin*, at 1045. Without more, the myriad of ineffective assistance of counsel claims being brought would place too great a burden on the courts, thereby denying those with valid claims the swift and speedy justice to which they are entitled. Accordingly, we hold that a defendant may not rely merely on assertions that

he will prove his case through affidavits, but must state with some degree of particularity what the affidavits, witnesses, etc., will describe.

■ Defendant next argues that the district court erred, as a matter of law, in holding that the underlying criminal convictions constituted three separate felonies. The three underlying offenses were previous convictions for Criminal Sexual Conduct, second degree, under Michigan law. A review of the facts reveals that two of the offenses occurred on the same date and in the same building. They were, however, committed against separate victims, and on different floors and locations within the house.

This court, *en banc*, recently addressed this issue in *United States v. Brady*, 988 F.2d 664 (6th Cir.), *cert. denied*, —— U.S. ——, 114 S.Ct. 166, 126 L.Ed.2d 126 (1993), holding as follows:

> Consistent with the holdings of our sister circuits, we believe that offenses committed by a defendant at different times and places and against different victims, although committed within less than an hour of each other, are separate and distinct criminal episodes and that convictions for those crimes should be counted as separate predicate convictions under § 924(e)(1).

*Brady*, 988 F.2d at 669.

In the case at bar, defendant's conviction is similar to the one at issue in *Brady*. Defendant could have halted his criminal rampage at any time. Yet, he chose to continue selecting different victims in separate places. There seems to be no real reason for distinguishing between the events happening in separate rooms on separate floors of the same house versus separate, but nearby, structures as were the facts in *Brady*.

Accordingly, it cannot be said the district court erred by holding these underlying offenses amounted to three separate offenses.[4]

---

**4.** In defendant's reply brief, he argues that the government failed to prove the underlying felonies were crimes of violence. He notes that the Armed Career Criminal Act applies only to crimes of violence. Further, he notes that under Michigan law, the crime of Criminal Sexual Conduct, second degree, is not always a crime of violence. Hence, defendant maintains that it was incumbent on the government to introduce proof that the crimes for which defendant was found guilty were crimes of violence.

■ Finally, defendant contends the district court erred by imposing a $5,000.00 fine. Defendant argues the district court did not examine his ability to pay by considering the factors listed in U.S.S.G. § 5E4.2(d). Specifically, defendant notes his counsel had been appointed for him and the record does not reflect whether he had the financial resources to pay the fine.

This court has stated that "[t]he Sentencing Guidelines place the burden on the defendant to prove that he is unable to pay a fine." *United States v. Hickey*, 917 F.2d 901, 907 (6th Cir.1990) *citing* Guidelines § 5E4.2(f); *United States v. Perez*, 871 F.2d 45, 48 (6th Cir.) *cert. denied*, 492 U.S. 910, 109 S.Ct. 3227, 106 L.Ed.2d 576 (1989). Neither defendant nor his counsel raised the issue of his ability to pay in the district court. Since defendant failed to meet his burden of proof, the district court did not err by imposing a fine.

## V.

Defendant contends that his conviction on count 2, using a firearm during and in relation to a drug trafficking crime, was not supported by sufficient evidence. Defendant argues that the AR–15 rifle found in his hotel room was not shown to have been used during and in relation to the drug trafficking crime for which he was convicted. Defendant further argues there was no showing that he ever carried or used the rifle.

■ The test for determining whether a jury's verdict was based upon insufficient evidence is whether, after viewing the evidence in a light most favorable to the government and drawing all reasonable inferences in favor of the government, the evidence is sufficient to justify a reasonable juror to conclude that each element of the offense has been established beyond a reasonable doubt.

This argument has never been raised before, and this court will not now consider it. In the case, at bar, the government stated that defendant did not dispute that the three convictions were violent felonies. Defendant, in his reply brief, argues that this opened the door. It is true that where an appellee has made an argument not addressed by the appellant, the appellant may respond to it. *Pachla v. Saunders Sys.*, 899 F.2d 496, 502 (6th Cir.1990). This is not the

*Jackson v. Virginia*, 443 U.S. 307, 319, 99 S.Ct. 2781, 2789, 61 L.Ed.2d 560 (1979).

■ Defendant was convicted of violating 18 U.S.C. §§ 924(c)(1) and (2), which provide as follows:

(1) Whoever, during and in relation to any crime of violence or drug trafficking crime ... uses or carries a firearm, shall, in addition to the punishment provided for such crime of violence or drug trafficking crime, be sentenced to five years....

(2) For purposes of this subsection, the term "drug trafficking crime" means any felony punishable under the Controlled Substances Act (21 U.S.C. *et seq.*), the Controlled Substances Import and Export Act (21 U.S.C. 951 *et seq.*) or the Maritime Drug Law Enforcement Act (46 U.S.C. 1901 *et seq.*).

18 U.S.C. § 924(c).

This court has previously held as follows:

[W]hen we evaluate whether a firearm was carried in relation to an offense, we do not focus solely on the defendant's intentions as he engaged in the precise conduct that compromised the predicate offense. Rather, we examine the totality of circumstances surrounding the commission of the crime: the emboldened sallying forth, the execution of the transaction, the escape, and the likely response to contingencies which might have arisen during the commission of the crime. A conviction under 924(c)(1) will withstand appellate review if the possessor of a weapon intended to have it available for possible use during or immediately following the transaction by lending courage to the possessor. The defendant's sole purpose in the carrying of the weapon need not have been the facilitation of the drug trafficking crime. (citations omitted).

situation at bar. Merely stating what is not in dispute does not place the issue in dispute absent it being raised at the proper time. Defendant failed to raise this issue previously, either on appeal from his state convictions or in the district court, hence, he is precluded from doing so now. *See United States v. Perkins*, 994 F.2d 1184, 1191 (6th Cir.), *cert. denied*, —— U.S. ——, 114 S.Ct. 279, 126 L.Ed.2d 230 (1993).

*United States v. Brown,* 915 F.2d 219, 226 (6th Cir.1990).

In the case at bar, the evidence showed that defendant, as verified by his handwriting, had registered for a room at Howard–Johnson's motel. The only key to the room was found on his person, in his pocket. The police searched the room, finding the AR–15 rifle and eleven one-ounce packages of cocaine. Clearly it was reasonable for a jury to infer that the gun belonged to and was used by defendant. This circuit has often recognized the connection between guns and drug trafficking, going so far as to call firearms "tools of the drug trafficking trade." *United States v. Gahagan,* 865 F.2d 1490 (6th Cir.) *cert. denied,* 492 U.S. 918, 109 S.Ct. 3242, 106 L.Ed.2d 590 (1989). It was within the province of the jury for them to conclude that the AR–15 rifle was there to protect the only contents of the room not belonging to the hotel, to-wit: the cocaine. No other reason was presented for the gun's presence. Hence, it cannot be said that there was insufficient evidence from which the jury could have found defendant guilty.

## VI.

Defendant contends that he was provided with ineffective assistance of counsel and was thereby prejudiced. Defendant argues that his defense counsel's closing argument was rambling, that defense counsel failed to properly investigate the case, and that corroborating witnesses were not presented.

 This court has recently held as follows:

> "As a general rule, a defendant may not raise ineffective assistance of counsel claims for the first time on direct appeal, since there has not been an opportunity to develop and include in the record evidence bearing on the merits of the allegations." *United States v. Wunder,* 919 F.2d 34, 37 (6th Cir.1990). The customary procedure to be followed in this situation by the various circuits is to permit the defendant to raise his ineffectiveness of counsel claim in a proper post-conviction proceeding under 28 U.S.C. § 2255. When, however, the record is adequate to assess the merits of

the defendant's allegations, some courts will consider them.

*United States v. August,* 984 F.2d 705, 711 (6th Cir.1992).

In the case at bar, the record is not sufficiently complete for this court to provide appellate review. There is no evidence from counsel as to what his trial strategy might have been. Accordingly, this court can not decide this issue at this time.

## VII.

The Order of the District Court should be and is hereby **AFFIRMED.**