File Name:  05a0803n.06
Filed:  September 26, 2005

**NOT RECOMMENDED FOR FULL-TEXT PUBLICATION**

No.  04-6139

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

UNITED STATE S OF AMERICA,
　　*Plaintiff-Appellee*

　　　　　　v.

FINIS EWIN HILL,
　　*Defendant - Appellant*

_____/

On Appeal from the
United States District Court for
the Western District of Tennessee

BEFORE:  KENNEDY, COOK, and GRIFFIN, Circuit Judges.

KENNEDY, Circuit Judge.

Defendant Finis Ewin Hill appeals from the district court's order sentencing him to two-hundred twenty-two months (222) imprisonment and three (3) years supervised release.  On appeal, defendant argues: 1) the district court erred in classifying him as an "armed career criminal" under 18 U.S.C. § 924(e), 2)  the district court engaged in prohibited fact-finding when assigning him his offense level and criminal history score, 3) the court improperly imposed conditions of supervised release.  Finally, we also address whether this case should be remanded in light of the Supreme Court's recent decision in *United States v. Booker*.  125 S.Ct. 738 (2005).   For the following reasons, we hold defendant was properly classified as an "armed career criminal" but we vacate the defendant's sentence and remand for resentencing under *Booker*.

1

## BACKGROUND

On Sunday, July 27, 2003, the defendant approached Brocknie Bray with a firearm, threatened her with that firearm and attempted to abduct her. On May 12, 2004, he entered a guilty plea in state court to the charges of Attempted Especially Aggravated Kidnapping and Aggravated Assault. He received a total state sentence of 16 years for those charges.

On May 26, 2004, the defendant entered a guilty plea to Title 18 U.S.C. § 922(g), a felon in possession of a firearm. Based on the Sentencing Guidelines, the normal range for this offense is 21-27 months. However, the district court found that the defendant met the requirements of the Armed Career Criminal Act, a sentencing enhancement statute. The statute provides:

> In the case of a person who violates section 922(g) of this title and has three previous convictions by any court referred to in section 922(g)(1) of this title for a violent felony or a serious drug offense, or both, committed on occasions different from one another, such person shall be fined under this title and imprisoned not less than fifteen years, and, notwithstanding any other provision of law, the court shall not suspend the sentence of, or grant a probationary sentence to, such person with respect to the conviction under section.

18 U.S.C. § 924(e).

Since the district court found the defendant had four previous convictions for a "violent felony" under § 924(e), the district court held he was an armed career criminal and subject to a minimum of 15 years of imprisonment. 18 U.S.C. § 924(e). The defendant's guideline imprisonment range was 188 to 235 months. The district judge ordered that the defendant serve two-hundred twenty-two (222) months of imprisonment followed by three (3) years of supervised release. The court

2

also ordered that the defendant participate in a mental health and sex offender treatment program and that he receive testing and treatment for drug and alcohol abuse.

**ANALYSIS**

I.

We first consider the defendant's argument that the district court improperly enhanced his sentence pursuant to the Armed Career Criminal Act ("ACCA"). Since this is a constitutional challenge to a sentence, we exercise de novo review. *United States v. Copeland*, 321 F.3d 582, 601 (6th Cir. 2003).

The defendant raises a preliminary issue concerning the district court's authority to determine whether a conviction constitutes a "violent felony" under Title 18 U.S.C. § 924(e). The defendant cites to *Apprendi v. New Jersey*, where the Supreme Court held that "*other than the fact of a prior conviction*, any fact that increase the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury." 530 U.S. 466, 492, 120 S.Ct. 2348, 2362-63 (2000) (emphasis added). The defendant argues that even in light of this exclusion, the district court may not characterize a conviction as a "violent felony" under § 924(e) because doing so requires an application of law to the fact of conviction in violation of *Apprendi*.

In *United States v. Barnett,* we addressed this exact issue. *See Barnett*, 398 F.3d 516, 525 (6th Cir. 2005). The defendant argued "the failure of the court to submit to the jury the question of the nature of his prior convictions under the Armed Career Criminal Act violated *Apprendi." Id.* at 525. This court rejected that argument finding that "*Apprendi* does not require the nature of prior

convictions to be determined by a jury." *Id.* at 525. Consequently, we hold that the district court had authority to characterize a prior conviction as a "violent felony" under § 924(e).

Since the district court has this authority, the next issue raised by the defendant is whether the district court correctly found that the defendant committed at least three "violent felonies" as defined in § 924(e). The district court found that the defendant had been convicted of four violent felonies: (1) an attempted felony on January 28, 1985; (2) an assault on October 27, 1983; (3) another assault on the same day, October 27, 1983; (4) and a burglary on February 20, 1992. Since § 924(e) only requires three predicate qualifying offenses, in order to fall outside the ambit of the enhancement provisions of the ACCA, the defendant must establish that the district court erred in classifying two of these four felonies as violent felonies. "Since determining whether the conduct was a single occasion or multiple occasions presents a legal question concerning the interpretation of a statute, we review the district court's decision de novo." *United States v. Murphy*, 107 F.3d 1199, 1208 (6th Cir. 1997); *United States v. Graves*, 60 F.3d 1183, 1185 (6th Cir. 1995).

The defendant first contends that the district court should have only counted the second and third offenses, the assaults, as one violent felony because they are sufficiently related. Both assaults took place at the Amvet's Club, a bar, within a couple hours of each other. The first assault took place around midnight when the defendant got into a fight with one Billy Jack William Simpson. At some point during the altercation, Mr. Simpson got into his car and drove off. The defendant and his accomplices followed Mr. Simpson, eventually running him off the road at which point Mr. Simpson exited his car and ran off on foot. The defendant and his accomplices then returned to the Amvet's Club. Within moments of the defendant's return, around 1:30 a.m., he got into another fight, this time with a man named Clinton McKee. The defendant eventually stabbed Mr. Mckee.

4

The defendant was charged with and plead guilty to assaulting both Mr. Simpson and Mr. Mckee.

At sentencing, the district court found the separate assault convictions constituted two "violent felonies" under the ACCA. The defendant argues that the district court should have counted these assaults as only one predicate offense.

As defined in the statute, an armed career criminal is one who commits three predicate violent felonies "on occasions different from one another." 18 U.S.C. § 924(e)(1). By requiring "different occasions" this circuit has held that Congress intended to provide enhanced punishment for "multiple criminal episodes." *Murphy,* 107 F.3d at 1209. An episode is "an incident that is part of a series, but forms a separate unit within the whole. Although related to the entire course of events, an episode is a punctuated occurrence with a limited duration." *United States v. Brady*, 988 F.2d 664, 668 (6th Cir. 1993) (en banc) (quoting *United States v. Hughes*, 924 F.2d 1354, 1361 (6th Cir. 1991)).

Generally, in those cases where only one criminal episode was found to exist, this court has focused on the fact that a "definable endpoint" to the crime spree was not ascertainable. *See United States v. Thomas*, 211 F.3d 316 (6th Cir. 2000); *Murphy*, 107 F.3d 1199; *Graves*, 60 F.3d 1183. In *Murphy*, the defendant and two accomplices entered a residence and robbed the occupant. The defendant then remained in that first residence to prevent the occupant from calling the police while his accomplices went to an adjoining, second residence and robbed that occupant. This circuit found that because no "principled way of distinguishing between the end of the first burglary and the beginning of the second" existed, the burglaries constituted only one episode. *Murphy,* 107 F.3d at 1210. We reasoned, "[b]ecause Congress intended to punish recidivists, the predicate conduct

5

must amount to separate and distinct transactions in some definable sense...Because he (the defendant) never left the first location, he did not 'successfully complete' the first burglary." *Murphy,* 107 F.3d at 1210.

In reaching this conclusion, the *Murphy* panel relied upon *United States v. Graves.* In *Graves*, the defendant burglarized a home. As he was leaving the home, he was confronted by a police officer. The defendant fled, the officer followed, and the defendant fired three shots at the pursuing officer. This court held that the surrounding circumstances, that this happened within moments of the burglary, because of the burglary, and at the same location as the burglary, required the conclusion that the assault was part of the same criminal episode. *Graves*, 60 F.3d at 1187.

More recently in *United States v. Thomas*, this circuit again found that where no definable endpoint exists, the criminal acts are to be considered one episode. *Thomas,* 211 F.3d 316. In *Thomas*, the defendant and his accomplice asked two women for a ride and they agreed. Once in the car, the defendant beat the passenger while threatening the driver. The defendant then repeatedly raped the passenger while his accomplice raped the driver. They then changed partners and the defendant raped the driver. The defendant was convicted of raping both women. This court noted that *Murphy* instructs that some "reasoned basis" for separating the criminal conduct should exist and that determining whether the first crime was concluded provides such a basis. *Thomas,* 211 F.3d at 320-321. However, the court found the criminal behavior to be "one continuous episode" because there was no conclusion of the defendant's criminal activity against the first woman when he began to rape the second woman. *Thomas,* 211 F.3d at 321.

However, when there is a conclusion of the first criminal act, or rather when a "definable endpoint" to the first criminal act is present, we have found there to be multiple criminal episodes.

6

*See United States v.* Wilson, 27 F.3d 1126 (6th Cir. 1994); *Brady*, 988 F.2d 664. In *Brady*, the defendant was convicted of two robberies. The defendant first robbed several people in a beauty shop and then, only thirty minutes later, the defendant went to a bar and robbed several other people. This court held that this behavior constituted two separate predicate offenses for purposes of § 924(e)(1) even though the length of time between the robberies was brief. While noting that the crimes were committed against different victims and at different times, we emphasized the fact that the defendant's first criminal act had ended and that he chose to engage in a second criminal act, stating that "while defendant Brady sat at the Club Continental Bar with his concealed shotgun, he could have decided that the one robbery he had committed was enough for the evening. Instead, he decided to rob again....". *Brady*, 988 F.2d at 669.

In *Wilson* this circuit again found there to be separate predicate convictions where the two offenses occurred on the same date and in the same building. In *Wilson*, the defendant sexually assaulted the first victim and then left that location and elected to seek out another victim in the other part of the house. This court reasoned this case was similar to *Brady* because the "Defendant could have halted his criminal rampage at any time. Yet, he chose to continue selecting different victims in separate places." *Wilson*, 27 F.3d at 1131.

In reviewing these cases, we conclude the defendant engaged in two criminal episodes for purposes of § 924(e) when he committed the assaults. The facts of this case suggest it is more in line with *Brady* and *Wilson* than with *Murphy*, *Graves*, and *Thomas* because a "definable endpoint" does exist. The defendant left the Amvet's Club, followed Mr. Simpson in his car, and ran Mr. Simpson off the road. At this point, the defendant's crime spree halted as he had "successfully completed" his first assault. Yet rather than concluding his criminal behavior, the defendant rode back to the

7

Amvet's Club and engaged in another criminal act. Similar to the defendants in *Brady* and *Wilson,* the defendant "chose to continue" rather than end his criminal rampage. *Wilson*, 27 F.3d at 1131. Because of this choice, we hold the defendant engaged in two predicate offenses for purposes of § 924(e).

The defendant also argues that the court erred in holding that his conviction for "an attempt to commit a felony" was a violent felony under § 924(e)(2). Since we hold that the defendant engaged in two criminal episodes, and thus he has committed three predicate offenses under § 924(e)(2), we decline to address this argument.

## II.

The defendant next contends that the district court erred in assigning him his offense level and criminal history score. Since this court will be examining the district court's legal conclusions with respect to the application of the United States Sentencing Commission Guidelines, these issues are reviewed de novo. *United States v. Campbell*, 309 F.3d 928, 930 (6th Cir. 2002).

The defendant raises three arguments regarding the way in which his offense level and criminal history score were assigned. The entirety of defendant's argument regarding all three issues is quoted here:

> the sentencing enhancement of § 2A4.1(b)(3), the cross-reference of § 2K2.1(c)(1)(A) and the two-point addition to the criminal history score under § 4A1.1(d) were given following the factual findings of the district judge and were therefore in derogation of the defendant's Sixth Amendment right to a jury trial as guaranteed by the *Blakely* decision.

Defendant's Brief, p. 36.

All three of defendant's arguments are meritless because the court did not rely on U.S.S.G. § 2A4.1(b)(3), the cross-reference of U.S.S.G.§ 2K2.1(c)(1)(A), or U.S.S.G. § 4A1.1(d) when

8

sentencing the defendant.  Rather, since the defendant is an armed career criminal under 18 U.S.C. § 924(e), the district court properly relied on U.S.S.G. § 4B1.4, a guideline which prescribes the offense level and criminal history score for armed career criminals.  Under U.S.S.G.§ 4B1.4 the offense level for an armed career criminal is "34, if the defendant use or possessed the firearm or ammunition in connection with ...a crime of violence". U.S.S.G. § 4B1.4(b)(3)(A).  Further, the criminal history category for an armed career criminal is "Category VI, if the defendant  used or possessed the firearm or ammunition in connection with...a crime of violence".  U.S.S.G. § 4B1.4(c)(2).  The defendant plead guilty to attempted especially aggravated kidnapping and aggravated assault, and he did not object to the statement in the presentence report that "these convictions were the result of the same incident and course of conduct which was involved in the instant federal offense".  A court "at sentencing may accept any undisputed portion of the presentence report as a finding of fact." Federal Rules of Criminal Procedure, Rule 32(i)(3)(A). The district court properly sentenced the defendant under U.S.S.G. § 4B1.4, because the defendant possessed a firearm during the violent crimes of attempted kidnapping and assault. The guidelines cited by the defendant are those that would have applied had the defendant not been sentenced as an armed career criminal under 18 U.S.C. § 924(e).  Since we hold the district court properly characterized the defendant as an armed career criminal, we find the defendant's arguments moot.

III.

The defendant also disputes two special conditions that were imposed by the district court on his supervised release. We will only set aside a supervised release condition if it is determined that the district court abused its discretion in imposing the condition.  *United States v. Ritter*, 118 F.3d 502, 504 (6th Cir. 1997).

9

First, the defendant argues the district court erred in ordering that he participate in a mental health and sex offender treatment program. A special condition may be imposed under 18 U.S.C.A. § 3583(d) where the condition:

> (1) is reasonably related to the factors set forth in section 3553(a)(1), (a)(2)(B), (a)(2)(C), and (a)(2)(D);
> (2) involves no greater deprivation of liberty than is reasonably necessary for the purposes set forth in section 3553(a)(2)(B), (a)(2)(C), and (a)(2)(D); and
> (3) is consistent with any pertinent policy statements issued by the Sentencing Commission pursuant to 28 U.S.C. 994(a)

On abuse of discretion review, if "a condition of supervised release is reasonably related to the dual goals of probation, [namely] the rehabilitation of the defendant and the protection of the public, it must be upheld." *Ritter,* 118 F.3d 502, 504 (quoting *United States v. Bortels,* 962 F.2d 558, 560 (6th Cir.1992)). A court may consider prior criminal behavior of the defendant even where the prior criminal conduct did not lead to a conviction if that information was admitted by the defendant or derived from a reliable source. *U.S. v. Kingsley*, 241 F.3d 828, 835 (6th Cir. 2001). A sentencing court's failure to express its reason for imposing a particular condition is considered harmless error "if the supporting reasons are evident on the overall record." *Id.* at 836.

In this particular case, the following facts were known to the court when the conditions were imposed: (1) the defendant attempted to abduct a woman in the present offense; (2) on July 27, 198,4 he was arrested for attempted rape and on January 28, 1985, he was convicted of attempting a felony; (3) on August 6, 1991, he was arrested for aggravated burglary and aggravated rape and eventually convicted of aggravated battery. Given these facts, we hold that the condition imposed is reasonably related to the goals of rehabilitation of the defendant and the protection of the public.

10

The defendant also argues that the imposition of the second condition of supervised release, that the defendant receive testing and treatment for drug and alcohol abuse, was unjustified. If a defendant does not raise an objection at the district court level, then the even stricter standard of plain error review applies. *United States v. Hall*, 71 F.3d 569, 573 (6th Cir. 1995). At sentencing, the defendant did not object to the imposition of this condition; however, the defendant argues that the abuse of discretion standard still applies because the district court did not "ask the parties whether they had any objections to the sentence just pronounced..." *United States v. Bostic*, 371 F.3d 865, 872 (6th Cir. 2004). We need not address whether the stricter standard of plain error applies because the imposition of this condition meets the requirements of the abuse of discretion standard, (*i.e.* it is reasonably related to the dual goals of rehabilitation of the defendant and protection of the public) since the defendant admitted that he has drank since he was sixteen and has used marijuana since he was eighteen.

IV.

The district court sentenced the defendant before *United States v. Booker* was decided. In *Booker*, the Court held that the Sentencing Guidelines are no longer mandatory. 125 S.Ct. 738. In *Barnett*, we relied on *Booker* and held that courts should vacate those sentences where the district court sentenced as if the guidelines were mandatory. *Barnett*, 398 F.3d 516, 525. In this case, the district court admits to sentencing under the assumption the guidelines were mandatory.[1]

---

[1]At the sentencing proceeding the district court stated, "based upon the authority of *Blakely v. Washington* and *U.S. v. Koch*, this court is obligated to apply the sentencing guidelines to this case"; and later stated that as the district court he "[would] be the first to admit that if the guidelines don't apply, then this one is coming back."

11

Yet, the defendant has not asked this court to consider whether his sentence should be vacated and remanded in light of the now-advisory nature of the Guidelines. We caution the defendant and future parties that this court has not hesitated to refuse to remand a case for resentencing when a party does not raise this issue. *See United States. v. Slone,* 411 F.3d 643, 651 (6th Cir. 2005) (court finding it "imprudent" to remand a case for resentencing "in the absence of some indication from the defendant that he seeks such relief"). However, in this case, the plaintiff at oral arguments expressly waived any objection to defendant's oral motion to resentencing. We therefore VACATE the defendant's sentence and REMAND the case for resentencing.